JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN COOPER,<br><br>                Plaintiff,<br><br>     v.<br><br>MICHAEL A. RAMOS, District Attorney for the County of San Bernardino; STEVEN MYERS, Senior Criminalist with the California Laboratory; DOE 1, unidentified SBCSD officer; DANIEL GREGONIS, criminalist at the SBCSD; FRED ECKLEY, SBCSD Deputy; KEN SCHRECKENGOST, SBCSD Deputy; WILLIAM BAIRD, SBCSD Deputy; HECTOR O'CAMPO, SBCSD Detective; GALE DUFFY, SBCSD Deputy; DAVID STOCKWELL, SBCSD Deputy; DOE 2, yet to be identified SBCSD officer,<br><br>                Defendants. | CV 11-3942 SVW (OPx)<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS [32, 34]** |

I.  INTRODUCTION AND BACKGROUND

After a jury trial, Plaintiff Kevin Cooper ("Plaintiff") was convicted of four counts of first degree murder and one count of attempted murder with the intentional infliction of great bodily injury, for the June 4, 1983 murders of Douglas Ryen, Peggy Ryen,

Jessica Ryen and Christopher Hughes; and the attempted murder of Joshua Ryen.  On May 6, 1991, the Supreme Court of California affirmed the judgment of conviction and the imposition of the death penalty.  People v. Cooper, 53 Cal. 3d 771, 793 (1991), cert denied, 502 U.S. 1016 (1991).  Plaintiff has since filed several petitions for writ of habeas corpus and other collateral challenges to his conviction.

The evidence presented at trial included DNA analysis of several items found at or near the murder scene.  On July 20, 2000, Plaintiff filed a motion for post-conviction DNA testing pursuant to California Penal Code § 1405 ("Section 1405").  Plaintiff and the State subsequently entered into a Joint DNA Testing Agreement dated May 20, 2001.  Pursuant to the agreement, STR Profiler Plus DNA testing was performed on specified pieces of crime scene evidence.  Plaintiff alleges that defendant Steven Myers, a Senior Criminalist with the California Department of Justice, performed the DNA testing and prepared a report.  (See Dkt. 1, Complaint, at ¶¶ 10, 25).

On September 24, 2001, Plaintiff filed a motion for evidentiary hearing raising allegations of evidence tampering.  On October 22, 2002, Plaintiff filed a motion under Section 1405 for further post-conviction DNA testing.  On July 2, 2003, following an evidentiary hearing, the Superior Court of the State of California, County of San Diego ("Superior Court") issued an Order Denying Motion for Mitochondrial DNA Testing, Claims of Evidence Tampering, and Request for Post-Conviction Discovery.

In 2004, the Ninth Circuit, sitting en banc, authorized Plaintiff to file a second or successive application for a writ of habeas corpus, and remanded to the district court with instructions to order that two

additional tests be performed so that "the question of Mr. Cooper's innocence can be answered once and for all." Cooper v. Woodford, 358 F.3d 1117, 1124 (9th Cir. 2004) (en banc). The two tests were a mitochondrial test of blond hairs found in one of the victim's hands, and a test for the presence of the preservative agent EDTA on a bloody T-shirt. See Cooper v. Brown, 510 F.3d 870, 873-74 (9th Cir. 2007). On remand, the district court conducted mitochondrial DNA testing on the hairs and EDTA testing on the T-shirt. The court also held evidentiary hearings. The court then denied Plaintiff's habeas petition on the merits and, alternatively, on the ground that Cooper's claims in the successive petition were procedurally barred. The Ninth Circuit affirmed. See id.

On August 12, 2010, Plaintiff filed a motion in Superior Court under Section 1405 seeking further post-conviction DNA testing of three items: (1) item DOJ-6 (a tan T-shirt found near the crime scene); (2) item VV-2 (a vial of blood drawn from Plaintiff in 1983); and (3) item A-41 (a drop of blood on a paint chip from the victims' house). Plaintiff alleges that prior DNA testing revealed traces of DNA from an unknown individual on these items. (Complaint, at ¶¶ 26-29). Re-testing these items using current DNA technology, Plaintiff alleges, could allow him to identify the source of this foreign DNA, thereby providing support for Plaintiff's longstanding claim that incriminating DNA evidence was planted at the crime scene. (Id. at ¶¶ 32-33).

On January 14, 2011, the Superior Court issued an order denying Plaintiff's Section 1405 motion. Plaintiff did not file a petition for review with the California Supreme Court.

On May 6, 2011, Plaintiff filed the instant Complaint in this Court, predicated upon alleged violations of 42 U.S.C. § 1983. In the Complaint, Plaintiff alleges that he is the target of a long-running conspiracy, involving members of the San Bernardino County Sheriff's Department and others (collectively referred to herein as "Defendants"), in which numerous individuals have conspired to manipulate evidence in order to prevent Plaintiff from proving that he was framed for the murders of which he was convicted. In the most recent "overt act of government misconduct," Plaintiff alleges that defendant Michael Ramos (the District Attorney for the County of San Bernardino) instructed defendant Myers to submit a false declaration to the Superior Court in connection with Plaintiff's August 12, 2010 motion for further post-conviction DNA testing under Section 1405. (See Complaint, at ¶¶ 39, 46).

Plaintiff alleges the following three claims: (1) Denial of procedural due process based on § 1405 proceedings against defendants Ramos and Myers; (2) Civil conspiracy to deny procedural due process based on § 1405 request against defendants Ramos and Myers; and (3) Civil conspiracy to deny substantive due process based on tampering with and falsifying evidence against all Defendants. (See Complaint, at ¶¶ 55-74).

On July 5, 2011, defendants Michael Ramos, Daniel Gregonis, Fred Eckley, William Baird, Irvin Sharp, Hector O'Campo, Gale Duffy and David Stockwell filed a Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (Dkt. 32). In this Motion, the moving defendants argue that this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, because Plaintiff's

4

1 Complaint constitutes a forbidden de facto appeal of the state court
2 judgment.  The moving defendants further argue that Plaintiff fails to
3 allege sufficient facts to support his claims of conspiracy, and that
4 certain defendants are protected from this action by absolute immunity.
5     On July 5, 2011, defendant Myers filed a Motion to Transfer Case
6 to Southern District of California or in the Alternative, to Dismiss
7 the Complaint.  (Dkt. 34).  With respect to the Motion to Dismiss,
8 Myers contends that the case should be dismissed for lack of subject
9 matter jurisdiction under the Rooker-Feldman doctrine.  Myers also
10 contends that Plaintiff's claims are barred by issue preclusion,
11 because the claims against Myers were necessarily and finally decided
12 in the state court proceedings.  Myers further contends that
13 Plaintiff's suit against Myers in his official capacity is barred by
14 the Eleventh Amendment.
15     On August 4, 2011, the Court denied the Motion to Transfer Venue.
16 (Dkt. 40).  Currently before the Court are Defendants' Motions to
17 Dismiss.  For the reasons set forth below, Defendants' Motions to
18 Dismiss are GRANTED.  The Complaint is DISMISSED WITHOUT PREJUDICE.

**II.  LEGAL STANDARD**

    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction to hear the claims alleged. Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be asserted either as a facial challenge to the complaint or a factual challenge.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial challenge, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  Id; Warren v. Fox Family Worldwide,

Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). When reviewing a facial challenge, the court is limited to the allegations in the complaint, the documents attached thereto, and judicially noticeable facts. Gould Electronics, Inc. v. United States, 220 F.3d 169, 176 (3rd Cir. 2000). The court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff. Id. Conversely, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court may review extrinsic evidence, and if the evidence is disputed, the Court may weigh the evidence and determine the facts to satisfy itself as to its power to hear the case. See id; Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).[1]

    Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears the burden of showing that federal jurisdiction is proper. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 376-78 (1994); Valdez v. United States, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd 56 F.3d. 1177 (9th Cir. 1995). "In effect, the court presumes *lack* of jurisdiction until plaintiff proves otherwise."

---

[1] However, "a jurisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." Safe Air for Everyone, 373 F.3d at 1039 (quoting Sun Valley Gas, Inc. v. Ernst Enters., 711 F.2d 138, 140 (9th Cir. 1983)) (internal quotation marks omitted). Accordingly, "where . . . 'the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.'" Autery v. United States, 424 F.3d 944, 956 (9th Cir. 2005) (quoting Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987)).

Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial § 9:77.10 (Rutter Group 2011) (citing, *inter alia*, Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989)) (emphasis in original). "The proponents of subject-matter jurisdiction bear the burden of establishing its existence by a preponderance of the evidence." Remington Lodging & Hospitality, LLC v. Ahearn, 749 F. Supp. 2d 951, 955-56 (D. Alaska 2010) (citing United States ex rel. Harshman v. Alcan Elec. & Eng'g, Inc., 197 F.3d 1014, 1018 (9th Cir. 1999)).

Here, Defendants present a facial challenge to the Court's subject matter jurisdiction.

**III. DISCUSSION**

    **A.   Applicable Law**

        **1.   The Rooker-Feldman Doctrine**

Federal appellate jurisdiction over state court judgments rests exclusively with the United States Supreme Court. 28 U.S.C. § 1257. The Rooker-Feldman doctrine, named for the two Supreme Court decisions upon which it is based,[2] recognizes that federal district courts therefore lack subject matter jurisdiction to review state court judgments. Thus, the Rooker-Feldman doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine provides that a federal district court is without

---

[2] Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

7

subject matter jurisdiction to hear an appeal from the judgment of a state court. Bianchi v. Rylaarsdam, 334 F.3d 895, 896 (9th Cir. 2003).

The Rooker-Feldman doctrine also applies where a state court loser does not style its federal action as an "appeal" of a state court decision, but files an action that nevertheless constitutes a "de facto" appeal. Reusser v. Wachovia Bank N.A., 525 F.3d 855, 859 (9th Cir. 2008). An action constitutes a forbidden de facto appeal of a state court judgment where the federal plaintiff: (1) asserts as a legal wrong an allegedly erroneous decision by a state court; and (2) seeks relief from the state court's judgment. See Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003) ("If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court."); see also Bianchi v. Rylaarsdam, 334 F.3d 895, 900 n.4 (9th Cir. 2003) ("*Rooker-Feldman* bars federal adjudication of any suit in which a plaintiff alleges an injury based on a state court judgment and seeks relief from that judgment, not only direct appeals from a state court's decision.").

Where an action is, at least in part, a forbidden de facto appeal of a state court judgment, the Rooker-Feldman doctrine further bars the plaintiff from litigating any issues that are "inextricably intertwined" with issues in that de facto appeal. See Noel, 341 F.3d at 1158 ("A federal district court dealing with a suit that is, in part, a forbidden de facto appeal from a judicial decision of a state court must refuse to hear the forbidden appeal. As part of that refusal, it must also refuse to decide any issue raised in the suit

that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision.").[3]

> A claim is inextricably intertwined with a state court judgment if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it," *Pennzoil Co.*, 481 U.S. at 25 (Marshall, J., concurring), or if "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995).

Fontana Empire Center, LLC v. City of Fontana, 307 F.3d 987, 992 (9th Cir. 2002).

### 2. General Constitutional Challenge to a Statute

While a particular state court decision is not reviewable by federal district courts, a plaintiff may properly bring a general constitutional challenge to the statute or rule upon which a state court decision is based. "A state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action." Skinner v. Switzer, 131 S. Ct. 1289, 1291 (2011). Accordingly, in Skinner, the Supreme Court held that plaintiff's suit was not barred under Rooker-Feldman, where "[h]e does not challenge the prosecutor's conduct or the decisions reached by the [state court of appeals] in applying *Article 64* to his motions; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts." Id. at 1296.

---

[3] As explained in Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003), the "inextricably intertwined" analysis comes into play only *after* the Court has concluded that the action is, in part, a forbidden de facto appeal. "The federal suit is not a forbidden de facto appeal because it is 'inextricably intertwined' with something. Rather, it is simply a forbidden de facto appeal. Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play[.]" Id. at 1157-58.

9

### B. Rooker-Feldman Analysis

#### 1. De Facto Appeal

Here, Plaintiff both (1) asserts as a legal wrong an allegedly erroneous decision by the state court; and (2) seeks relief from the state court judgment. Accordingly, this action is, at least in part, a forbidden de facto appeal of a state court judgment under the Rooker-Feldman doctrine. See Noel, 341 F.3d at 1164.

##### a. Allegedly Erroneous Decision by the State Court as a Legal Wrong

Plaintiff alleges in his Complaint that:

> by finding that allegations of tampering "cannot serve as a basis for satisfying the specific statutory requirements" of § 1405, and by holding that the potential to identify the minor contributor(s) to the DNA samples is of no 'practical significance' and cannot satisfy the conditions of § 1405(f)(6)(B), the Superior Court of the State of California has made it impossible for Plaintiff to utilize § 1405 to prove that he was framed. This interpretation deprives Plaintiff of his liberty and property interests in § 1405 without due process of law.

(Complaint, at ¶ 62). See also, e.g., id. at ¶ 60 ("Additionally, because Plaintiff has met all of the factors enumerated in § 1405, he has a legitimate claim of entitlement to DNA testing under § 1405 that is protected by the Fourteenth Amendment's Due Process Clause.").

Plaintiff clearly asserts as a legal wrong an allegedly erroneous decision by the state court. He alleges that he met all of the factors enumerated in Section 1405 and thus was entitled to post-conviction DNA testing, that the Superior Court erroneously concluded that he did not satisfy these statutory requirements, and that as a result Plaintiff was unable to utilize Section 1405 to prove that he was framed. The first requirement for a forbidden de facto appeal under Rooker-Feldman is therefore satisfied.

**b. Relief From the State Court's Judgment**

The state court judgment of which Plaintiff complains denied Plaintiff's August 12, 2010 motion under Section 1405 for further post-conviction DNA testing. (See Dkt. 33-1, Request For Judicial Notice ("RJN"), Exh. A). In his Complaint, Plaintiff seeks "[a] declaratory judgment that Plaintiff is entitled to access and to perform DNA testing on the evidence requested in his 2010 § 1405 motion." (Complaint, at ¶ 75). Plaintiff clearly and unequivocally seeks relief from the state court judgment. The second requirement for a forbidden de facto appeal under Rooker-Feldman is therefore satisfied.

***

Accordingly, this action is a forbidden de facto appeal of the state court's decision under the Rooker-Feldman doctrine. See Noel, 341 F.3d at 1164.

**2. Inextricably Intertwined Claims**

Because this action is, at least in part, a forbidden de facto appeal of the state court judgment, the Court must further determine whether Plaintiff's remaining claims are "inextricably intertwined" with this de facto appeal, such that they must also be dismissed under Rooker-Feldman. The Court concludes that all of Plaintiff's claims are "inextricably intertwined."

Plaintiff alleges that he is the target of a long-running conspiracy, involving members of the San Bernardino County Sheriff's Department and others, in which numerous individuals have conspired to manipulate evidence in order to prevent Plaintiff from proving that he was framed. Plaintiff, however, already presented this conspiracy theory to the state court. Plaintiff specifically argued that further

11

1  DNA testing would demonstrate that DNA evidence in this case had been
2  tampered with and that he had, in fact, been framed for the murders.
3  (See Dkt. 33-1, RJN, Exh. A, at 17).  Indeed, a substantial portion of
4  the state court's 29-page decision is spent addressing the plausibility
5  of Plaintiff's allegations of conspiracy and evidence tampering, and
6  the significance of these allegations in the context of Plaintiff's
7  request for further post-conviction DNA testing.  (See Dkt. 33-1, RJN,
8  Exh. A, at 17-27).

9       In the instant Complaint, Plaintiff alleges that Myers
10 participated in the conspiracy by submitting a false declaration to the
11 state court in connection with Plaintiff's Section 1405 motion.  (See
12 Complaint, at ¶¶ 34-40).  As conceded in the Complaint, however,
13 Plaintiff expressly argued to the state court that the declaration
14 submitted by Myers was false.  Indeed, Plaintiff submitted the
15 declaration of his own expert, Dr. Miller, which directly contradicted
16 Myers' declaration and pointed out the alleged inconsistencies between
17 this declaration and Myers' prior 2002 expert report.  (See id. at
18 ¶¶ 41-43).  The state court concluded that Myers' declaration was
19 credible, "[a]dopting verbatim much of the language in Defendant
20 Myers's declaration" in its order denying Plaintiff's motion.  (Id. at
21 ¶ 43).

22      Accordingly, Plaintiff's claims against Defendants succeed "only
23 to the extent that the state court wrongly decided the issues before
24 it[.]"  Fontana Empire Ctr., LLC, 307 F.3d at 992.  As a result, these
25 claims are "inextricably entwined" with Plaintiff's prohibited de facto
26 appeal of the state court's judgment.  See id.
27      Kougasian v. TMSL, Inc., 359 F.3d 1136 (9th Cir. 2004), cited by
28

Plaintiff, is distinguishable. There, the plaintiff alleged that the defendants in the state court proceeding had submitted a false declaration at the last minute and refused to supply the telephone number or address of the declarant, thereby preventing the plaintiff from deposing or otherwise questioning him. Id. at 1140. The Ninth Circuit observed that "[e]xtrinsic fraud is conduct which prevents a party from presenting his claim in court." Id. (quoting Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981)). "It has long been the law that a plaintiff in federal court can seek to set aside a state court judgment obtained through extrinsic fraud." Id. at 1141. Thus, the court concluded: "Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. *Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud." Id. at 1141.

Kougasian is distinguishable on two bases. First, Plaintiff alleges only *intrinsic* fraud in this case; namely, the submission of Myers' purportedly false expert declaration to the state court. The veracity of this report was litigated thoroughly before the state court, including through the submission of an opposing expert declaration. (See Complaint, at ¶¶ 41-42). Because Plaintiff was not "prevent[ed] . . . from presenting his claim in court," the Rooker-Feldman exception for extrinsic fraud recognized in Kougasian does not apply. See id. at 1140; Wood v. McEwen, 644 F.2d 797, 801 (9th Cir. 1981) ("Extrinsic fraud is conduct which prevents a party from

13

presenting his claim in court. At the hearing at which Judge Kelleher considered McEwen's report, Wood fully participated in the proceedings. Wood's allegation of perjury does not raise an issue of extrinsic fraud. At most it raises an issue of intrinsic fraud and does not provide a substantive ground for relief.") (internal citations omitted).

Second, unlike in Kougasian, Plaintiff's Complaint alleges legal error in the state court's decision and seeks relief from the state court judgment, thereby rendering Plaintiff's action, at least in part, a de facto appeal barred under the Rooker-Feldman doctrine. Cf. Kougasian, 359 F.3d at 1143 ("In this case, Kougasian has asserted no legal error by the state court. She is therefore not bringing a de facto appeal under *Rooker-Feldman*. Because she is not bringing a forbidden de facto appeal, there are no issues with which the issues in her federal claims are 'inextricably intertwined' within the meaning of *Rooker-Feldman*.").

**C.  General Constitutional Challenge to Section 1405**

In his Opposition, Plaintiff attempts to re-frame the allegations in his Complaint as a general challenge to the constitutionality of the statute governing the state court's decision (Section 1405), rather than a de facto appeal of the state court's order itself. Under Skinner v. Switzer, 131 S. Ct. 1289 (2011), Plaintiff argues, this constitutional challenge to the statute "as construed" by California courts is not barred by the Rooker-Feldman doctrine. As discussed above, however, Plaintiff's Complaint clearly and unequivocally challenges the state court's decision (*i.e.*, the application of Section 1405 to the particular facts of this case). Cf. Skinner, 131 S. Ct. at

1296 (holding Rooker-Feldman did not apply where plaintiff "does not challenge the prosecutor's conduct or the decisions reached by the [state court of appeals] in applying *Article 64* to his motions; instead, he challenges, as denying him procedural due process, Texas' postconviction DNA statute 'as construed' by the Texas courts.").[4]

Accordingly, Plaintiff's constitutional challenge to the state court's application of Section 1405 is "inextricably intertwined" with his forbidden de facto appeal of the state court judgment and must be dismissed. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983) ("If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's [claim], then the district court is in essence being called upon to review the state-court decision. This the district court may not do."); accord Worldwide Church of God v. McNair, 805 F.2d 888, 892 (9th Cir. 1986) ("claims are 'inextricably intertwined' if the district court must 'scrutinize not only the challenged rule itself, but the [state court's] application of the rule. . . . If, in order to resolve the claim, 'the district court would have to go beyond mere review of the state rule as promulgated, to an examination of the rule as applied by the state court to the particular factual circumstances of [the

---

[4] Plaintiff purports to challenge Section 1405 "as construed" by California courts. In reality, however, Plaintiff challenges only the Superior Court's application of Section 1405 *in this particular case*. (See, e.g., Dkt. 43, Opposition, at 8 n.4 ("The California Superior Court [in this case] . . . held that this factor cannot be satisfied through allegations that the DNA will reveal evidence of tampering . . . . The court found that, even though additional DNA testing could reveal the presence of minor DNA contributors, such findings could not satisfy the statutory requirement because plaintiff's DNA would still be found on the evidence.")).

plaintiff's] case,' then the court lacks jurisdiction.") (quoting Razatos v. Colorado Supreme Court, 746 F.2d 1429, 1433 (10th Cir. 1984)).[5]

---

[5] To the extent that Plaintiff's Complaint could possibly be read as posing an independent, general challenge to the constitutionality of Section 1405 "as construed" by California courts, this claim must fail. As formulated by Plaintiff in his Opposition, the only argument regarding the constitutionality of Section 1405 that even arguably could be gleaned from the Complaint is that "Section 1405 violates due process by foreclosing access to DNA testing for convicted criminals who allege that they were framed through planted DNA evidence." (Dkt. 43, Opposition, at 7) (citing Complaint, at ¶ 62).

Plaintiff points to no California state court decision, however, construing Section 1405 to "foreclose access to DNA testing for convicted criminals who allege that they were framed through planted DNA evidence," nor has the Court found any such decision. To the contrary, the state court in this case concluded that while allegations of evidence tampering *could* potentially serve as the basis for a Section 1405 motion:

> Mere speculation that evidence tampering has occurred . . . cannot serve as the basis for satisfying the specific statutory requirements for post-conviction DNA testing. This Court finds, after an evaluation of all of the evidence, defendant has not demonstrated there is a reasonable probability he would have had a more favorable outcome if the requested DNA results had been available.

(Dkt. 33-1, RJN, Exh. A, at 26-27). To the extent that Plaintiff contends Section 1405 (as construed by California courts) is unconstitutional because it forecloses access to DNA testing based on "mere speculation" that evidence tampering occurred, this argument lacks merit. Plaintiff has no due process right to discovery based on mere speculation.

Moreover, the procedures outlined in Section 1405 have been found not to violate due process by several courts. See Faris v. Brown, 2010 U.S. Dist. LEXIS 97758 (N.D. Cal. Sept. 17, 2010) (noting that Section 1405's provisions are more generous than those approved by the Supreme Court in District Attorney's Office For The Third Jud. Dist. v. Osborne, 129 S. Ct. 2308 (2009)); Clifton v. Cline, 2009 U.S. Dist. LEXIS 99562 (E.D. Cal. Oct. 23, 2009) (same); Soderstrom v. Orange County DA, 2009 U.S. Dist. LEXIS 106200 (C.D. Cal. Oct. 14, 2009); Balzarini v. Goodright, 2009 U.S. Dist. LEXIS 93446, 8-9 (N.D. Cal. Oct. 5, 2009).

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motions to Dismiss. The Complaint is DISMISSED WITHOUT PREJUDICE, to the extent that Plaintiff is able to plead viable claims that are not barred by Rooker-Feldman.

IT IS SO ORDERED.

DATED: November 10, 2011

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE